IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MONTEZ M. BOWENS | : | CIVIL ACTION |
| | : | NO. 14-2689 |
| v. | : | |
| | : | |
| EMPLOYEES OF THE DEPARTMENT | : | |
| OF CORRECTIONS, et al. | : | |

O'NEILL, J.                                                                June 23, 2016


## MEMORANDUM

Now before me is a motion for summary judgment by defendants Dr. P. Bratton and Dr.

Martinez, Dkt. No. 68, a memorandum in support thereof, Dkt. No. 70, their statement of facts,

Dkt. No. 70, and a lengthy appendix to their motion.  Dkt. Nos. 71-74.  Also before me is an

opposition to Bratton and Martinez's motion by plaintiff Montez M. Bowens, who is proceeding

pro se.  Dkt. No. 78.  For the reasons that follow, I will grant defendants' motion.

## BACKGROUND

Plaintiff is an inmate who is housed at the State Correctional Institute at Graterford.  He

commenced this action on May 9, 2014.  Dkt. No. 1.  All that remains in this case are his claims

against defendants Bratton and Martinez, psychiatrists at Graterford.  Bratton and Martinez

previously moved to dismiss plaintiff's claims against them, asking that the Court, in the

alternative, consider their motion as a motion for summary judgment with respect to plaintiff's

failure to exhaust administrative remedies.  I declined to convert their motion, explaining that the

Court of Appeals for the Third Circuit has emphasized the importance of notice requirements in

the context of converting a motion to dismiss into a motion for summary judgment, particularly

when a plaintiff is a pro se prisoner.  See Renchenski v. Williams, 622 F.3d 315, 340 (3d Cir.

2010) ("adequate notice in the pro se prisoner context includes providing a prisoner-plaintiff with a paper copy of the conversion Order, as well as a copy of Rule 56 and a short summary explaining its import that highlights the utility of a Rule 56(f) affidavit"); see also Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) ("when a court acts on its own in a way that significantly alters a pro se litigant's rights – for example, by converting one type of motion into a different type of motion – the court should inform the pro se party of the legal consequences"). Thereafter, Martinez and Bratton filed their motion for summary judgment with exhibits relevant to their exhaustion defense.

Plaintiff appears to contend that Bratton and Martinez denied him access to mental healthcare in violation of his constitutional rights, but the specifics of his claims against them are not entirely clear.  In his response to their motion to dismiss his initial complaint, plaintiff claimed that Bratton and Martinez acted "[i]n order to aid and assist correctional officers in their continuance of sexual harassment and or sexual abuse of him."  Dkt. No. 28 at ECF p. 6.  In an index of "individual involvement" which plaintiff includes in his lengthy amended complaint he points to factual allegations against Bratton in paragraphs 69 and 89 and against Martinez in paragraphs 81, 148 and 149.  Dkt. No. 48 at ECF p. 35.

With respect to Bratton, in paragraph 69 of his amended complaint, plaintiff claims only that "Bratton authorized plaintiff to be released from the restricted housing unit.  And housed on the special needs unit upon his release."  Id. at ECF p. 17.  In paragraph 89, plaintiff alleges that he filed grievance number 494952 on January 23, 2014 "[r]egarding grievance coordinator Wendy Shaylor's abuse of her authority and discretion."  Id. at ECF p. 22.  Grievance number 494952 – which is attached to plaintiff's amended complaint – does not appear to make any

reference to Bratton.[1]  Dkt. No. 48-3 at ECF p. 34.

With respect to Martinez, in paragraph 148, plaintiff alleges that Martinez came to his cell in the psychiatric observation unit and asked him if he was "ready to go back to the restricted housing unit," to which plaintiff claims he replied, "I'd rather die than to go back down there to the (RHU)."  Dkt. No. 48 at ECF p. 34.  Plaintiff claims that he then consumed medication which he had been saving in front of Martinez and another doctor who "went and got the security staff." Id.  Plaintiff alleges that "[a]fter 2 near death experiences, Dr. Martinez prescribed medication for depression for plaintiff."  Id.  Paragraph 149 of plaintiff's amended complaint does not identify Martinez, but alleges that following the incident with his medications, "Plaintiff was seen by the program review committee."  Id.; see also Dkt. No. 48-4 at ECF p. 67-68.  Plaintiff does not identify a grievance he filed in conjunction with this incident.

In paragraph 81 of his amended complaint, plaintiff alleges that in the denial of his grievance number 489823 he was "recommended to speak with Dr. Martinez."  Dkt. No. 19 at ECF p. 19-20; see also Dkt. No. 48-2 at ECF p. 74.  In the grievance, plaintiff ostensibly made allegations of sexual harassment (which apparently did not directly implicate either Martinez or Bratton).  See Dkt. No. 48-2 at ECF p. 74.  Grievance 489823 was denied because "it was determined that the allegation of sexual harassment could not be substantiated."  Id.  The assigned grievance officer explained that

---

[1]    Unsurprisingly then, defendants do not cite this grievance in their summary judgment motion.  This grievance was denied on February 6, 2014.  Dkt. No. 48-3 at ECF p. 30. Correspondence pertaining to the grievance was filed without further action on February 19, 2014.  Id. at ECF p. 31.  Plaintiff filed an appeal on March 14, 2014.  Id. at ECF p. 33. Plaintiff's appeal was denied on March 31, 2014.  Id. at ECF p. 29.  Additional correspondence pertaining to his grievance was filed on April 3, 2014.  Id. at ECF p. 16.  On May 1, 2014, plaintiff's grievance was dismissed at the final appeal level for failure to provide the Office of Inmate Grievances and Appeals with required documentation for proper review.  Id. at ECF p. 32.

> [t]he signs and gestures you claim are sexual harassment do not
> meet the guidelines for sexual harassment.  Video footage did not
> show any male officers spending a substantial amount of time at
> your cell, nor did they show or appear to show the 'gestures' that
> you identified in your grievance and identified in your official
> statement.

Id.  The grievance officer then encouraged plaintiff "to accept any help offered from Dr.

Martinez's office."   Id.  Plaintiff appealed from the initial review of grievance 489823 and

complained, in part, that "to date I have not seen anyone [from the department of psychology]

who wants to talk candidly about my allegations of sexual abuse."  Dkt. No. 74-1 at ECF p. 1.

On appeal, the facility manager agreed that plaintiff's grievance should be denied because, after

interviews and a review of video footage, security office staff "were unable to substantiate [his]

allegations and advised that the behavior of staff [plaintiff was] accusing does not meet the

criteria of sexual harassment."  Dkt. No. 74-1 at ECF p. 3.  On final appeal, this grievance was

dismissed by the Office of Inmate Grievances and Appeals because plaintiff failed to provide the

office with required documentation for a proper review.  Dkt. No. 74-1 at ECF p. 5.

Beyond these incidents specifically alleged in plaintiff's amended complaint, Bratton and

Martinez explain in their motion for summary judgment, that "to confirm that Plaintiff failed to

exhaust his administrative remedies, [they] subpoenaed a complete copy of Plaintiff's grievance

files and documentation" and, in response, "the Department of Corrections . . . produced records

related to more than 100 grievances."  Dkt. No. 69 at ECF p. 3.  Of those grievances, they

contend that, "[o]nly six [(including grievance 489823)] . . . could be construed to relate in any

way to Dr. Bratton or Dr. Martinez." Dkt. No. 69 at ECF p. 3.

Defendants cite grievance 448217, in which plaintiff contends that all correctional facility

personnel, including "doctors" who came into contact with Plaintiff (but not specifically naming

Bratton or Martinez) have written him up for sexual harassment.  Dkt. No. 70 at ECF p. 5; see

-4-

also Dkt. No. 74-1 at ECF p. 22.  This grievance was rejected on February 14, 2013, Dkt. No.

74-1 at ECF p. 21, and was again rejected on February 21, 2013.  Id. at ECF p. 23.  Reasons cited

for rejecting the grievance were:  (1) "Grievance related to the following issues shall be handled

according to procedures specified in the policies listed and shall not be reviewed by the Facility

Grievance Coordinator.  a) DC ADM 801 Inmate Discipline/Misconduct Procedures";

(2) "Grievance does not indicate that you were personally affected by a Department or facility

action or policy;" and (3) "Grievance must be legible, understandable, and presented in a

courteous manner."  Dkt. No. 74-1 at ECF p. 21, 23.  There is no record evidence of an appeal

from the rejections of grievance 448217.

      Defendants also cite grievance 493326, dated January 10, 2014, in which plaintiff claims

that

> staff put pressure on my Doctor, Mrs. P. Bratton to change my
> [mental health] level from a (c) to a (b) not because I'm making
> progress and have become mentally stable.  Rather the change was
> made to have me removed from the special needs unit because I
> observed . . . staff engaged in acts of sexual exploitation with
> inmates that have chronic to severe mental health disorders . . . .

Id. at ECF p. 20.  After an investigation, grievance 493326 was denied on January 28, 2014.  Id.

at ECF p. 15.  The assigned grievance officer explained that "after a full investigation of

[plaintiff's] allegations and review of video [his] grievance [was] unfounded . . . ."  Id.  Plaintiff

appealed on February 14, 2014, id. at ECF p. 14, and the grievance officer's determination was

upheld on March 31, 2014 because an investigation was unable to substantiate his allegations.

Id. at ECF p. 13.

      Grievance 493567, dated January 15, 2014, likewise included complaints from plaintiff

that facility staff unjustifiably removed him from the Special Needs Unit after Bratton was

pressured to enable the transfer by changing his mental health status.  Id. at ECF p. 11.  The

grievance was rejected on January 16, 2014 because it "was not submitted within fifteen (15) working days after the events upon which claims are based," and "[t]he issue(s) presented on the attached grievance ha[d] been reviewed and addressed.  Prior grievance #493326."  Id. at ECF p. 10.

Grievance 494736, dated January 16, 2014, also claimed that facility staff put pressure on Bratton to change plaintiff's mental health status so that he could be removed from the Special Needs Unit.  Id. at ECF p. 9.  This grievance was rejected on January 22, 2014 for plaintiff's failure to comply with DOC policy.  Id. at ECF p. 8.  There is no evidence of record that plaintiff filed any appeal in accordance with DOC policy from either the rejection of grievance 494736 or the rejection of grievance 493567.

Finally, Bratton and Martinez cite grievance 511625, in which plaintiff requested protection from abuse and a temporary restraining order against a number of Graterford staff members including Martinez.  Id. at ECF p. 7.  Grievance 511625 was submitted on May 29, 2014, after plaintiff initiated this lawsuit.  Id.  Plaintiff had not submitted an appeal from this grievance as of the date when Martinez and Bratton obtained copies of plaintiff's grievance files.  Dkt. No. 69 at ECF p. 4.

## STANDARD OF REVIEW

Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The party moving for summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex, 477 U.S. at 322-23.  If the movant sustains its burden,

-6-

the nonmovant must set forth facts demonstrating the existence of a genuine dispute.  <u>See</u>

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  A dispute as to a material fact is

genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party."  <u>Id.</u>  A fact is "material" if it might affect the outcome of the case under governing law.

<u>Id.</u>

> To establish "that a fact cannot be or is genuinely disputed," a party must:
>
>> (A) cit[e] to particular parts of materials in the record, including
>> depositions, documents, electronically stored information,
>> affidavits or declarations, stipulations (including those made for
>> purposes of the motion only), admissions, interrogatory answers,
>> or other materials; or
>>
>> (B) show[ ] that the materials cited do not establish the absence or
>> presence of a genuine dispute, or that an adverse party cannot
>> produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The adverse party must raise "more than a mere scintilla of evidence in

its favor" in order to overcome a summary judgment motion and cannot survive by relying on

unsupported assertions, conclusory allegations, or mere suspicions.  <u>Williams v. Borough of W.</u>

<u>Chester</u>, 891 F.2d 458, 460 (3d Cir. 1989).  The "existence of disputed issues of material fact

should be ascertained by resolving all inferences, doubts and issues of credibility against" the

movant.  <u>Ely v. Hall's Motor Transit Co.</u>, 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation

marks omitted).

## DISCUSSION

Martinez and Bratton do not address the merits of plaintiff's claims, but contend that

summary judgment is warranted in their favor because "[p]laintiff failed to take the steps

necessary to exhaust his administrative remedies before initiating this lawsuit."  Dkt. No. 69 at

ECF p. 10.  Plaintiff does not specifically dispute any of the facts set forth in Bratton and

Martinez's motion.  Instead, in his response to defendants' motion he argues that the Department

of Corrections does not provide a grievance process for allegations of sexual abuse and/or sexual

harassment and therefore contends he was unable to exhaust his administrative remedies with

respect to his claims against Martinez and Bratton.[2]  Dkt. No. 78 at ECF p. 2-3.

      "An inmate . . . may not bring any action[ ] absent exhaustion of available administrative

remedies."  Ross v. Blake, No. 15-339, 2016 WL 3128839, at *5 (U.S. June 6, 2016), citing

Woodford v. Ngo, 548 U.S. 81, 85 (2006).  "[T]hat edict contains one significant qualifier: the

remedies must indeed be 'available' to the prisoner."  Ross, 2016 WL 3128839, at *5.  "[A]n

administrative procedure is unavailable when (despite what regulations or guidance materials

may promise) it operates as a simple dead end – with officers unable or consistently unwilling to

provide any relief to aggrieved inmates."  Id., at *7.  "[W]hen a remedy is . . . essentially

"unknowable" – so that no ordinary prisoner can make sense of what it demands -- then it is also

unavailable."  Id. at *8.  "[T]he same is true when prison administrators thwart inmates from

taking advantage of a grievance process through machination, misrepresentation, or

intimidation."  Id.  Because exhaustion is an affirmative defense, defendants bears the burden of

proof to show plaintiff failed to exhaust.  Small v. Camden Cnty., 728 F.3d 265, 271 (3d Cir.

2013) (citations omitted).

      Plaintiff contends that defendants have not shown that he failed to properly exhaust his

administrative remedies, but "rather they have provided a plethora of grounds for which

exhaustion is impossible[ ] due to the department policy DC ADM 804 . . . which provides an

---

[2]    In his amended complaint, plaintiff asserts that he was unable to exhaust his
administrative remedies because he "was admitted to the Psychiatric Observation Unit on
1/23/15 until 3/11/15.  And transferred out of SCI Graterford to SCI Camp Hill."  Dkt. No. 48 at
ECF p. 54.  He does not pursue this argument in his response to defendants' motion for summary
judgment.

alternative to the grievance process . . . [and] which has no clear . . . provision for exhaustion of complaints of sexual abuse and or sexual harassment."  Dkt. No. 78 at ECF p. 4.  In support of his argument that he lacked a forum for exhaustion, plaintiff submits a memorandum from John E. Wetzel, Secretary of Corrections to "[a]ll inmates" dated March 31, 2014 which explains revisions to the inmate grievance system set forth in DCM-ADM 804.  Id. at ECF p. 7.  In relevant part, the policy which plaintiff cites explains that the inmate grievance system

> is not meant to address incidents of an urgent or emergency nature including allegations of sexual abuse as defined in Department Policy DC-ADM 008, "Prison Rape Elimination Act (PREA)." When faced with an incident of an urgent or emergency nature, the inmate shall contact the nearest staff member for immediate assistance.

Id.  It further explains that

> A grievance regarding sexual abuse will not be addressed through the Inmate Grievance System and must be addressed through Department Policy DC-ADM 008.  There are better ways in which a sexual abuse claim can be reported which is outlined in Department Policy DC-ADM 008.  If a gr[ie]vance is filed regarding allegations of sexual abuse, while it will not be addressed through the Inmate Grievance System, the grievance will be immediately forwarded to the Security Office as well as the PREA compliance Manager in accordance with DC-ADM 008. . . .

Id.  Further,

> [w]hen a grievance pertains to Department Policy DC-ADM 008, the Facility Grievance Coordinator shall do the following:  (1) immediately forward a copy of the grievance to the PREA Compliance Manager and to the Security Office to be investigated in accordance with Department policy DC-ADM 008; and (2) the rejection notice to the inmate shall include a statement informing the inmate that his/her grievance was forwarded to the PREA Compliance Manager and to the Security Office for investigation in accordance with Department policy DC-ADM 008.

Id. at ECF p. 8.

However, plaintiff does not point out that the Secretary's memorandum was prepared

*after* plaintiff filed all of the grievances addressed herein with the exception of grievance

511625.  With respect to the events set forth in grievance 511625, submitted on May 29, 2014,

the requirements set forth in the version of DCM-ADM 804 which went into effect on May 1,

2014 apply.  See Dkt. No. 71-1 at ECF p. 31.  However, it matters not whether plaintiff had

available administrative remedies with respect to this grievance – a grievance which was not

addressed in his amended complaint.  Indeed, plaintiff did not file this grievance until after the

commencement of this action.  Further, in his response to defendants' motion, plaintiff does not

make any reference to this grievance and does not explain how it is relevant to the claims which

he makes in this case.  Accordingly, I find that substance of this grievance is not an issue

pending before the Court.

        With respect to plaintiff's other grievances, what he does not include in his response to

defendants' motion is the following language included in the inmate grievance system set forth

in the version of DCM-ADM 804 effective on January 8, 2010:

> A grievance dealing with allegations of abuse shall be handled in
> accordance with DCM-ADM 001, "Inmate Abuse Allegation
> Monitoring Process" and/or DC-ADM 008 "Sexual Harassment of
> or Sexual Contact with Inmates."[3]  This may extend the time for
> responding to the grievance, but *will not alter the inmate's ability
> to appeal* upon his/her receipt of the Initial Review response.
> When a grievance is related to an allegation of abuse and the
> grievance is the first notice made by the inmate, the Grievance

---

[3]        Neither defendants nor plaintiff have provided the Court with a copy of DC-ADM
008 as it was written at the time of the events relevant to this action.  According to a version of
DC-ADM 008 effective on August 7, 2015, "if an inmate files a grievance related to sexual
abuse, the Grievance Officer shall reject the grievance and forward it to the facility Security
Office for tracking and investigation.  The inmate will be notified of this action.  *This will be
considered an exhaustion of administrative remedies.*"  Commw. of Pa. Dep't of Corr., Policy
Statement, Prison Rape Elimination Act (PREA), DC-ADM 008, Effective Date Aug.7, 2015,
http://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/008%20Prison%20Rape%20
Elimination%20Act.pdf (emphasis added).  There is nothing in the record which would suggest
that this would have been true at the time of the events relevant to the grievances which underlie
plaintiff's claims in this action.

> Coordinator will issue an Extension Notice to the inmate by
> checking the box "Notice of Investigation."  The Initial Review
> Response will be completed by the assigned Grievance Officer
> when the results from the Office of Special Investigations and
> intelligence are received.

Dkt. No. 71-1 at ECF p. 18 (emphasis added).  Under this version of DCM-ADM 804, it was an

inmate's responsibility to "appeal an Initial Review Response/Rejection, or grievance restriction

to the Facility Manager in writing, within 15 days from the date of the Initial Review

Response/Rejection or notice of a grievance restriction."  Id. at ECF p. 21.  Likewise, it was an

inmate's responsibility, when "dissatisfied with the disposition of an appeal from the Facility

Manager," to "submit an Inmate Appeal to Final Review . . . within 15 working days from the

date of the Facility Manager designee's decision.  Only issues appealed to the Facility Manager

may be appealed to final review."  Dkt. No. 71-1 at ECF p. 23.

      Because of the timing of plaintiff's grievances, this version of DCM-ADM 804 was

applicable to each of the grievances referenced above with the exception of grievance 511625.

There is no question that under this version of the inmate grievance policy, plaintiff was able to

appeal from any grievance pertaining to sexual abuse or sexual harassment.  Further, to exhaust

his administrative remedies, plaintiff had the responsibility to complete an appeal from the

rejection of or initial review response received for each grievance – even though grievances

pertaining to sexual abuse or sexual harassment were to be forwarded to the Office of Special

Investigations and Intelligence for an investigation prior to any determination.  On the record

before me, plaintiff did not fully exhaust his remedies with respect to the events complained of in

grievance numbers 494952, 489823, 448217, 493326, 493567 and 494736 or the events

complained of in paragraphs 148 and 149 of the amended complaint.  Bratton and Martinez have

met their burden to show that plaintiff had available administrative remedies and that he failed to

exhaust them with respect to any of the claims he has raised against them.  Accordingly, summary judgment is warranted in Bratton and Martinez's favor with respect to plaintiff's claims against them in this action.

      An appropriate Order follows.